## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE HOYTE | : | |
|     Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 05-4437** |
| GEORGE WAGNER, ET AL. | : | |
|     Defendants. | : | |

## MEMORANDUM AND ORDER

**Tucker, J.**                                                                 **September 14, 2007**

Presently before the Court are the Motions of Defendants' Berks County Prison Board, County of Berks and George Wagner ("Berks Defendants") (Doc. 56) and the Motion to Dismiss on in the Alternative for Summary Judgment of the United States of America (Doc. 58). Oral argument was held on these Motions on March 28, 2007 before the late Honorable Senior Judge Clifford S. Green. For the reasons set forth below, upon consideration of the Motions and Responses thereto, this Court will grant the Berks Defendants' Motion, and grant the Motion of the United States.

## I.  BACKGROUND

From the evidence of record, taken in a light most favorable to the Plaintiff, the pertinent facts are as follows. Plaintiff, Jacqueline Hoyte, the widow of the decedent Basil Cuffy, initiated this action on August 19, 2005 against PrimeCare Medical, Inc.; Marybeth Jackson, MD; Thomas Ridge, Secretary of the Department of Homeland Security; William Riley, Bureau of Immigration and Customs Enforcement Local District Director; George Wagner; Berks County; Berks County Prison Board; John Does 1-20 (Berks County Prison Employees), and John Roes 1-20 (Bureau of Immigration and Customs Enforcement Employees). On August 26, 2005, Plaintiff filed an amended complaint against the Defendants. Plaintiff filed a second amended

complaint ("the Complaint") on May 25, 2006 alleging violation of Mr. Cuffy's constitutional rights and various claims against the United States under the Federal Tort Claims Act (FTCA).

Plaintiff's claims were dismissed against Defendants William Riley and Thomas Ridge on October 5, 2006 (Doc. 51), against Defendants PrimeCare Medical, Inc. and Marybeth Jackson, MD on March 15, 2007 (Doc. 67), and against John Does 1-20 and John Roes 1-20 for lack of specific identification of these Defendants after discovery.   Accordingly, the Berks Defendants and the United States remain parties to this action.

The parties allege the following facts for the relevant time period.  In 1995, Berks County entered into an Intergovernmental Service Agreement for Housing Federal Detainees (the "Agreement") with the Immigration and Naturalization Service ("INS"), predecessor to the Bureau of Immigration and Customs Enforcement ("ICE"). Under the Agreement, the types and level of services provided by Berks County Prison to ICE detainees must be those the Prison routinely proves other inmates.  The Prison is responsible for all the care and custody decisions regarding detainees at the Prison.  ICE officers do not have free access to the Prison, and are located in a separate trailer outside the secure perimeter of the Prison.  ICE officers do not have the authority to give instructions to Berks County Prison guards, and if there is a conflict between ICE Detention Standards and Prison policy, the Prison warden and guards are to decide what should be done.

Specifically, the Agreement provides that when detainees are admitted to an outside medical facility, Berks County Prison is to provide guard services for the first eight (8) hours, with ICE personnel taking over after that time.  The Prison, however, shall not remove its guards until ICE personnel relieves them.  Moreover, the Agreement requires the Prison to obtain pre-authorization for non-emergent, off-site medical care for the detainees from the United States

Public Health Service Division of Immigration Health Service Managed Care Coordinator.

Both the ICE and the Prison had standard operating procedures specific to the restraint of detainees while receiving off-site medical care.  Under the ICE standards, when determining whether to use restraints, each officer is required to make an individualized assessment of the detainee's risks to the public, the escorting officer(s), and himself, as well as the likelihood of absconding.  The assessment includes a review of the detainee's criminal violations (if any), aggressive or social behavior, suspected influence of drugs or alcohol, physical condition, sex, age, and medical condition.  ICE standards require that only the amount of restraint needed to ensure the safety of the officer, the detainee, and the public, and/or prevent escape shall be used.  Furthermore, ICE's Use of Restraints policy only requires restraints if recommended and approved by a medical profession, or for detainees serving criminal sentences, with violent criminal histories, or who are escape risks.

The Prison's standard operating procedure with respect to the restraint of prisoners/detainees receiving off-site medical care requires prison guards to keep inmates secured in handcuffs and/or leg shackles at all times.  If medical personnel state that it is medically necessary to remove all restraints, the prison guard is required to advise the medical personnel that removal of all restraints is against security regulations.  If medical personnel persists in their request, the prison guard is required to contact his shift commander for specific orders.

A.     **Basil Cuffy's Detention**

At the time of his death, Cuffy was detained by the United States Citizenship and Immigration Services ("USCIS"), now known as ICE.  Cuffy was a criminal alien, originally detained due to his felony convictions in New York State.  Cuffy had been convicted in New

3

York in May 2001 for trafficking cocaine, was being held by USCIS for deportation, and subsequently committed from Rikers Island Correctional Facility to Berks County Prison. Cuffy also had prior convictions for selling narcotics, turnstile jumping and menacing. Cuffy's detention lasted from October 2001 until his death on August 20, 2003.

Cuffy became ill in July 2003. As Cuffy's illness worsened, he was transferred to Reading Hospital on an emergency basis on August 7, 2003. Per the Agreement, Cuffy was escorted to Reading Hospital by Berks County Prison guards. While in Reading Hospital, Cuffy was guarded by Berks County Prison guards. ICE neither relieved the Prison guards, nor was asked to compensate the Prison for guard services provided while Cuffy was in the hospital. Cuffy remained handcuffed during his thirteen (13) days in Reading Hospital. Jennifer Esposito, Cuffy's only visitor during his hospitalization, noticed an indentation on his wrist from the handcuffs. Cuffy died in Reading Hospital from his illness.[1]

## B. Present Cause of Action

In the Berks Defendants' Motion for Summary Judgment, they assert that Plaintiffs have failed to demonstrate a genuine issue of material fact in the instant action. Specifically, the Berks Defendants assert Plaintiffs' claim must fail for the following reasons: (1) Counts I and V are not against the Berks Defendants; (2) Plaintiffs have failed to offer evidence that a genuine issue of material fact exists as to Counts II, III, and IV; (3) Berks Defendants are immune from tort liability under Count VI; and that (4) Plaintiffs failed to state a claim based on the wrongful disposition of Cuffy's remains.

To that end, Plaintiffs concede that the only claims that remain against the Berks

---

[1] This fact is not in dispute, and specifically, it is not alleged that the cause of Cuffy's death was other than his actual illness.

Defendants are Count III regarding Plaintiffs' punitive restraints claim, Count IV with respect to the excessive use of force claim, and Count VI alleging wrongful death and survival causes of action.

With respect to Plaintiff's claims against the United States, the parties agree that the issues remaining before the Court are whether Defendant Berks County Prison is an agent of Defendant United States, and whether Plaintiffs can satisfy their burden of proof with respect to a punitive restraints theory under the Federal Tort Claims Act.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by

5

affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against opponent, even if the quality of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.


### III.  DISCUSSION

**A.     Section 1983**

Under 42 U.S.C. § 1983 provides that "every person who, under color of statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law." Generally, to prevail pursuant to a § 1983 theory of liability, a plaintiff must prove that the defendant: (1) acted under color of state law, and (2) deprived plaintiff of a right protected by the Constitution. See Groman v. Township of Manalapan, 47 F.3d 765, 767 (3d Cir. 1986). It is a violation of an immigration detainee's Fourteenth Amendment rights to be subjected to punishment prior to an adjudication of guilt.

6

Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005).   When determining whether an immigration detainee has been subjected to punishment prior to an adjudication of guilt, the proper inquiry is whether the conditions or restrictions of an immigration detainee are imposed for the purpose of punishment or whether they are but an incident of some other legitimate governmental purpose.  Id.  Furthermore, when assessing whether the conditions are reasonably related to the assigned purposes, the court must also inquire as to whether these conditions cause immigration detainees to endure such privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.  Id.

Where a lawsuit alleging municipal liability is brought pursuant to § 1983, a municipality can only be liable when the alleged constitutional transgression was the result of implementation informally adopted by custom.  Monell v. N.Y. Dep't of Soc. Svc., et al., 436 U.S. 658 (1978).  Supervisory liability can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

**B.     Pennsylvania Political Subdivision Tort Claims Act**

Under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 et seq., local agencies and employees acting within the scope of their employment are generally immune from tort liability.[2]   However, the scope of this Act and the immunity it affords do not extend to state constitutional claims.  See Montanye v. Wissahickon Sch. Dist., 327 F. Supp. 2d 510, 525 (E.D. Pa. 2004).

---

[2]The Act further states that a local government entity may only be liable for injury to a person due to negligent acts that fall within one of the following enumerated exceptions: (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; or (8) care custody or control of animals.  42 Pa. Cons. Stat. Ann. § 8542(b).

**C.      Federal Tort Claims Act (FTCA)–Agency**

The FTCA provides that the United States is liable for the acts or omissions of federal employees.  28 U.S.C. § 2671.  Federal employees are defined as "officers or employees of any federal agency, members of the military, and persons acting on behalf of a federal agency in an official capacity."  Id.  The definition of "federal agency" includes corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.  Id.  Under Logue v. United States, 412 U.S. 521, 528 (1973), when determining whether a corporation is acting as an instrumentality or agent a critical element is the ability of the United States to control the detailed physical performance of the corporation.

**D.      Federal Tort Claims Act–Negligence Liability**

When presenting an FTCA claim setting for negligence, a plaintiff must show that (1) a duty was owed to him by a defendant; (2) the duty was negligently breached; and (3) the negligent breach of the duty was the proximate cause of the plaintiff's injury.  Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd, 306 F.2d 713 (3d Cir. 1962).  A federal district court addressing an FTCA action must apply the law of the state in which the alleged tortious conduct occurred.   Toole v. United States, 588 F.2d 403, 306 (3d Cir. 1978). Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury.  Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

**E.      Count III - Conditions of Confinement, Excessively Harsh & Punitive**
**         Count IV - Use of Excessive Restraint & Excessive Force**

The Berks Defendants assert in their Motion that Plaintiffs do not have enough evidence to sustain a remedy for the negligence claims set forth in Counts III and IV of the Second Amended Complaint.  The Court agrees.

First, the Berks Defendants assert that Berks County Prison's policy to keep the inmates secured in handcuffs and/or shackles at all times is constitutional as it was applied in Cuffy's case because it was necessary to protect the security of hospital personnel and the general public.

Plaintiffs respond with the deposition testimony of three (3) Berks County Prison correctional officers, Raymond Washington, Mark Sullivan, and Michael Kasper, who guarded Cuffy during his thirteen (13) days in Reading Hospital. Washington and Sullivan both state that Cuffy was restrained by handcuff to the railing of his hospital bed while under their guard. Both officers also state that Cuffy was incoherent, and Sullivan added that it was clear that Cuffy was dying. As such, Plaintiffs argue that the deposition evidence creates a genuine issue of material fact as to whether the continuous restraint of a dying man for thirteen (13) days was excessive in relation to the purpose of protecting the general public from an immigration detainee.

The Berks Defendants also assert that there is no cognizable cause of action against Defendant Wagner because there is no evidence that the Warden had any personal involvement in deciding the conditions of confinement at Reading Hospital, nor any knowledge about Cuffy's condition while at Reading Hospital. In response, Plaintiff provides the evidence of Wagner's deposition testimony that Wagner was instrumental in implementing the policy that requires restraint by handcuffs of a detainee who is also a hospital patient.

It is not lost upon this Court that Cuffy died in custody of the Berks Defendants during his detention at the Reading Hospital. However, liability in this tort cause of action turns wholly upon whether the grievous injury sustained by Cuffy was caused by the conduct of Defendants. Ultimately recovery as to Plaintiffs Count III and IV claims, sounding in negligence, turns on whether the evidence supports a finding that Defendants' conduct was the proximate cause of the injury alleged–Cuffy's death. Although Plaintiffs may have raised an issue of fact as to whether

9

Cuffy's restraint was excessive under the circumstances and with respect to the Prison's policies, Plaintiffs have failed to demonstrate materiality sufficient to give rise to a triable question of fact with respect to the causation element required to establish liability under Pennsylvania law. For these reasons, this Court will grant Defendants Motion as it pertains to Counts III and IV.

**F.      Count VI - Wrongful Death & Survival Actions**

The Berks Defendants assert in their present Motion that Plaintiffs' claims for wrongful death and survival should be dismissed because the Berks Defendants are entitled to immunity under the Tort Claims Act on all state law claims. Although Plaintiffs are correct that the immunity offered by the Tort Claims Act does not apply to constitutional torts, Plaintiffs in this action have brought wrongful death and survival claims specifically pursuant to Pennsylvania state statutes, 42 Pa. Cons. Stat. Ann. §§ 8301, 8302. Because the claims give rise to state tort actions, the Court agrees that the Berks Defendants are entitled to the immunity provided by the Tort Claims Act.

**G.      Count V - Federal Tort Claims Act**

Defendant United States asserts in its Motion that it is not liable under the FTCA. Specifically, the United States asserts that because it is not responsible for the day-to-day activities at the Prison, the Prison is merely an independent contractor of the United States, rendering the United States not liable for the Prison's alleged negligence under the FTCA.

In response, Plaintiffs state that Defendant has the authority to control the activities of prison employees, thus making the Prison an agent of the United States. Specifically, Plaintiffs rely on the Agreement between the Prison and the ICE to assert that the United States controlled the detailed physical performance of Berks County Prison guards during the days Cuffy was hospitalized.

10

However, Plaintiffs have presented no evidence that the Agreement gives the ICE authority to control the day-to-day operations at the Berks County Prison. The Agreement provides that the types and level of services provided by the Prison to ICE detainees must be those the Prison routinely provides to other inmates. Morever, ICE officers do not have the authority to give instructions to Berks County Prison guards, and if there is an conflict between ICE Detention Standards and Prison policy, the Prison warden and guards decide what action is required.

It is not lost upon the Court that the presence of Prison officials guarding Cuffy for his entire thirteen (13) days in Reading Hospital creates an issue of fact as to whether the Prison is an agent of the United States. Again, the relevant inquiry is whether that agency is material to proving Plaintiffs' claims in this case. The Agreement provided that Prison guards were required to guard Cuffy for the first eight (8) hours of his admittance to Reading Hospital, then absent another arrangement, not remove its guards until ICE personnel relieved them. The Agreement then states that the Prison is responsible for submitting an invoice for guard services beyond the initial eight (8) hours for services otherwise designated to ICE personnel under the Agreement.

However, Plaintiff has not provided evidence that Cuffy was injured by the United States's alleged negligence when restrained in Reading Hospital. The record reflects that Cuffy was restrained while resting in bed with a handcuff so loose that four fingers could easily fit in the excess space. While wearing the handcuff, Cuffy's arm was resting on the bed in a natural position, and he was able to move his arm from that position. Cuffy was permitted to leave the hospital bed to go to the bathroom whenever necessary, without the handcuff. He never complained about the handcuff, and his only hospital visitor, Jennifer Esposito, testified that she

11

only saw a small indentation on Cuffy's wrist.  Accordingly, the Court is persuaded that there is no genuine issue of material fact as to whether Cuffy's injury was caused by the Defendant's allegedly negligent restraint of Cuffy to his hospital bed.

## CONCLUSION

For the foregoing reasons, this Court will grant the Berks County Defendants' Motion for Summary Judgment as to Counts II, III, IV and VI.  Plaintiff has provided evidence that creates an issue of fact as to whether Berks County Prison is an agent of Defendant United States of America, but Plaintiff has failed to provide evidence that creates a genuine issue of material fact as to whether Defendant United States was negligent under the FTCA.  Because the availability of relief as to Plaintiffs' claims of agency against the United States turn on whether the United States was negligent under the FTCA, Plaintiff has failed to state a triable claim against the United States upon which relief can be granted.  An appropriate Order follows.